STATE By and Through ROAD COMMISSION
et al. v. DANIELSON et al.

No. 7752.   Decided September 15, 1952.   (247 P. 2d 900.)

See 29 C. J. S., Eminent Domain, sec. 333. Interest as part of compensation for land taken by eminent domain. 18 Am. Jur., Eminent Domain, secs. 272 et seq.; 111 A. L. R. 1304.

*Clinton D. Vernon*, Atty. Gen., *J. Lambert Gibson, Quentin L. R. Alston*, Salt Lake City, for appellants.

*Harley W. Gustin, Elliott W. Evans*, Salt Lake City, for respondents.

WOLFE, Chief Justice.

Action by the State of Utah, by and through the State Road Commission, to condemn two small tracts of land owned by the respondents at 6200 South Street and Highland Drive in Salt Lake County. After determining the amount of damages sustained by the respondents, the trial court awarded them interest on that amount at the rate of eight per cent per annum from the date of the order of immediate occupancy (entered by the court shortly after the complaint was filed) to the date of judgment. The State appeals, contending that interest should have been allowed only at the rate of six per cent and not at eight per cent.

The parties are in agreement that the respondents are entitled to interest upon their damages from the date of the order of immediate occupancy. *Oregon S. L. R. Co.*

v. *Jones,* 29 Utah 147, 80 P. 732; *Salt Lake & Utah R. Co.* v. *Schramm,* 56 Utah 53, 189 P. 90. But the statutes of this state on eminent domain are silent as to the rate of interest allowable to the condemnee. Title 44 of Utah Code Ann. 1943, dealing with the general subject of interest, provides in Sec. 44-0-1 that:

"The legal rate of interest for the loan or forbearance of any money, goods or things in action shall be six per cent per annum. * * *"

In Sec. 44-0-4, it is provided that:

"Any judgment rendered on a lawful contract shall conform thereto and shall bear the interest agreed upon by the parties, which shall be specified in the judgment; other judgments shall bear interest at the rate of eight per cent per annum."

The respondents contend that while technically an order of occupancy is not a judgment in the usual sense, the order is res judicata as to the public character of the use, the necessity for condemnation and the amount of land required, leaving for future determination the amount of the damages, citing Freeman on Judgments, Fifth Ed., Secs. 831, 832. Thus, they argue, the order of occupancy is akin to a final judgment although the exact amount of damages remains to be ascertained.

We deem it unnecessary to here decide what matters may be raised by the condemnee after an order of occupancy is entered and what matters are res judicata. Admittedly, the amount of the damage sustained by the condemnee is not determined prior to the entering of the order but is left for later determnation. Until such time as damages are determined, it is clear that there is no judgment which will bear interest within the meaning of Sec. 44-0-4. We have previously held that an order of immediate occupancy is nothing more than an interlocutory order. *Utah Copper Co.* v. *Montana-Bingham Consolidated Mining Co.,* 69 Utah 423, 255 P. 672. In that case,

this court in commenting upon the language of Sec. 7339, Comp. Laws 1917 (now Sec. 104-61-10, U. C. A. 1943) stated:

"It also would seem, from the language of the statute, that the plaintiff may move the court, etc., to occupy the premises sought to be condemned, 'pending the action,' and requiring the giving of a bond 'to pay all damages arising from occupation before judgment in case the premises are not condemned,' that an order permitting immediate possession 'pending the action' would be interlocutory and not final, and on the face of the order itself it appears that it permitted the possession and occupancy 'pending the action and until the further order of the court,' and thus was intended to be merely interlocutory. When the cause was finally submitted as to all of the issues, the court made findings and conclusions and rendered a decree upon all of the issues, including the questions or issues that the use of the premises applied for was a public use and authorized under the statute, that the taking was necessary for such use, and that the plaintiff was entitled to exercise the right of eminent domain. Thus, because of the statute and the nature of the orders, the first granting possession pending the action and until the further order of the court and the second a perpetual occupancy, we think the first order was interlocutory and the second final. *Templeton* v. *District Court*, 47 Cal. 70; *People* v. *District Court*, 11 Colo. 147, 17 P. 298." [69 Utah 423, 255 P. 677.]

In the absence of constitutional or statutory provision prescribing the rate of interest to which a condemnee is entitled from the date his property is taken by eminent domain proceedings until the date of the award of damages, it is generally recognized that he is ■ entitled to interest at the legal rate. *Simms* v. *Dillon*, 119 W. Va. 284, 193 S. E. 331, 113 A. L. R. 787; *In re Bronx River Parkway in City of New York*, 259 App. Div. 552, 20 N. Y. S. 2d 53, affirmed in 284 N. Y. 48, 29 N. E. 2d 465.

As has been pointed out, the legal rate of interest in this state for the forbearance of money is six per cent per annum. Sec. 44-0-1, U. C. A. 1943. Respondents were entitled to interest at this rate. The trial court erred ■ in allowing the respondents' interest on their dam-

ages at the rate of eight per cent from the date of the order of immediate occupancy to the date of judgment.

We have examined the other points raised by the State in its brief and find them without merit. As indicated by its memorandum decision, the trial court was impressed by the testimony of C. Francis Solomon, an expert real estate appraiser, and relied largely upon his testimony in arriving at the damages sustained by the respondents. While it is true that Mr. Solomon stated that he was basing his estimates upon values of property as of the date of trial, which was held nearly one year after the service of summons on the respondents, he explained that the difference in real estate values between those two dates would be "very slight" and the cost of fill dirt (one item of the respondents' damages) "may be a little less."

Complaint is made that the trial court's award of damages to the respondents Danielsons is not sustained by the evidence. We do not agree. The court awarded the Danielsons $1,900 for loss of use for business. While Mr. Solomon's estimate as to this element of damage was $1,740 (based on $25 per front foot on 6200 South Street) there was evidence adduced by the respondents of a sale of business property in that same locality at a higher figure. As to the value of the property taken by the State from the Danielsons' Mr. Solomon estimated the damages at $520; the trial court awarded damages for this item in the amount of $647. The excess of damages over and above Mr. Solomon's estimate can be accounted for by the fact that (1) Mr. Solomon's estimate was based on the hypothesis that the State had condemned .26 acres of the Danielsons' property, whereas at the time of the trial it appeared that .29 acres had been taken, and (2) Mr. Solomon in making his estimate did not take into consideration that there were fruit trees upon the property taken. Thus viewing the evidence as a whole, the trial court's award of damages to the Danielsons can be sustained.

The judgment below is affirmed as to the award of damages but should be modified as to the interest thereon in accordance with this opinion.

Each party to bear its own costs.

WADE, McDONOUGH, CROCKETT and HENRIOD, JJ., concur.