468 P.2d 366

Therald N. JENSEN, Executor of the Estate
of Clarence Anderson, Deceased,
Plaintiff and Appellant,

v.

Henry O. ANDERSON and Dorothy Anderson, husband and wife, Defendants and Appellants,

v.

Robert RADAKOVICH, Intervenor
and Respondent.

No. 11367.

Supreme Court of Utah.

April 15, 1970.

S. J. Sweetring, D. A. Frandsen, Price, for appellants.

Cullen Y. Christensen, Provo, for respondent.

CALLISTER, Justice.

Plaintiff, the executor of the estate of Clarence Anderson, initiated this action to quiet title to certain property of the decedent in which Henry O. Anderson claimed an interest. Robert Radakovich filed a petition to intervene and pleaded for specific performance of an option agreement. The matter was tried before an advisory jury, the majority of which found that the signature upon the option was that of Clarence Anderson. The trial court grant-

ed intervenor specific performance. On appeal, the validity of the option agreement is challenged.

Clarence Anderson granted Radakovich an option to purchase any or all of the property owned by Anderson on September 22, 1962, for a period of six years. Anderson died July 13, 1966. Radakovich attempted to exercise the option on October 11, 1966, at which time he submitted a down payment in accordance with the terms of the option to the executor of the estate. The executor refused the tender, denying the validity of both the signature of the decedent and of the agreement.

■ Radakovich admitted that he drew the option agreement; so accordingly if there appear therein uncertainty or ambiguity, the contract will be strictly construed against the party who drew it.[1]

Appellants claim that there was no consideration for the option. Respondent asserts that there was consideration, but irrespective of consideration the option was accepted prior to its withdrawal.

In Walker v. Bamberger,[2] this court observed:

* * * If a person offers to sell a piece of property to another, or to transfer a chose in action, and agrees to keep the offer open to a given day, or for a reasonable time, during which the person to whom it is made may accept, that is an option; and the person making the offer will be bound to keep it open if a sufficient consideration for so doing is given, but he will not be bound without such a consideration. * * *

■ In the instant action, if there were no consideration to support the option, the intervenor's acceptance after Clarence Anderson's death, was without legal effect; for the death of the offeror terminates the offer.[3]

In the option agreement, the following was recited:

Consideration: Robert Radakovich has helped me a lot on the place building sheds, with my selling and buying plus numerous other tasks all at no cost to me, which would be great if paid for.

Intervenor asserts that these services which he performed and for which he was not paid constituted consideration to support the option. Appellant asserts that the reference in the option is to past consideration, which will not support Anderson's promise. The trial court found as a matter of law that the option was supported by valid and adequate consideration.

Two witnesses, Marchello and Valentine, testified that they had also worked on the

1. Maw v. Noble, 10 Utah 2d 440, 443, 354 P.2d 121 (1960).
2. 17 Utah 239, 246, 54 P. 108 (1898).

3. 1 Williston on Contracts (3d Ed.) § 62, pp. 206–207.

Anderson property, for which they received no remuneration. Valentine stated that he worked on the shed as a favor to Radakovich. Marchello testified that he was never employed to work for Anderson. Intervenor admitted that he had run 20 head of cattle on the Anderson range without charge. He further testified that he had never been paid or received any money for the assistance he had rendered to Clarence Anderson throughout the years. He referred to the option as reimbursement for the work he had done.

Past services, when rendered under such circumstances as to create no legal liability, are not consideration for a subsequent promise. * * *[4]

* * * Consideration, by its very definition, must be given in exchange for the promise, or at least in reliance upon the promise. Accordingly, something which has been given before the promise was made and, therefore, without reference to it, cannot, properly speaking, be legal consideration. * * *

* * * The doctrine that past consideration is no consideration represents the overwhelming weight of authority and is almost universally followed. This has been the law since early times.[5]

Respondent asserts that an exception to the foregoing principle is applicable to the instant action.

A past consideration, given on a request of such a nature that if complied with the law would imply a promise to pay will sustain a promise founded on it; but if no promise could be implied from the request, as where the services were understood to be gratuitous, then a subsequent express promise is without consideration, and if the express promise is different from what the law would have implied it is not enforceable. The authorities which speak of services rendered on request as supporting a promise must be confined to cases where the request implies an undertaking to pay, and do not mean that, what was done as a mere favor can be turned into a consideration at a later time by the fact that it was asked for.[6]

Respondent contends that the court could reasonably find an *implied* request for his services by Anderson and an *implied* promise to pay therefor. He argues that the reference in the option that his services

---

4. In re Fisher's Estate, 128 Or. 415, 274 P. 1098, 1101 (1928).
5. 1 Williston on Contracts (3d Ed.) § 142, p. 620, pp. 622–623.
6. 17 C.J.S. Contracts § 117, pp. 838–839. Also see 1 Williston on Contracts (3d Ed.), § 145, p. 631, wherein it is stated that a subsequent promise given and accepted in satisfaction of a previous unliquidated liability arising from an implied obligation to pay for a requested service is supported by sufficient consideration.

were performed "at no cost" meant that he had not been previously compensated and not that they had been performed gratuitously. Since respondent selected the terms used in the contract, this ambiguity must be strictly construed against him.

In McCollum v. Clothier,[7] this court discussed the circumstances under which a contract will be implied and admonished:

> * * * this rule should not be applied to bind one under implied contract who merely permits services to be rendered him, or accepts benefits from another, under such circumstances that he may reasonably assume they are given gratuitously. The law should not require everyone to keep on guard against such possibilities by warning persons offering services that no pay is to be expected. It is, therefore, essential that the court should exercise caution in imposing the obligations of implied contract, as contrasted to express contract, where the parties have actually defined and agreed to the terms they are to be bound by. * * *

█ The circumstances revealed in the instant action indicate that intervenor was a bachelor friend of decedent, Anderson. Radakovich worked for the railroad and often visited with bachelor Anderson, during which time he assisted him with various chores about the Anderson property. There is no evidence to indicate that intervenor's services were rendered at request as a matter of business and consequently that there was a contemporaneous promise in fact to pay for them. Therefore, there was no consideration to support the option to purchase agreement.

The judgment of the trial court is reversed and remanded for disposition in accordance with this opinion. Costs are awarded to appellants. The other points on appeal are without merit.

CROCKETT, C. J., and TUCKETT and ELLETT, JJ., concur.

HENRIOD, Justice (dissenting).

With some misgiving I dissent, particularly for the reason that I think the case of Sims v. George, 24 Utah 2d 102, 466 P.2d 831, March 20, 1970, (in which I did not participate), was factually and in principle pretty much the same as the instant case. There, on the well-established but worked over rule that we review the evidence in a light most favorable to the arbiter of the facts who is more advantaged in canvassing the demeanor and color of the witness' eyes, etc., this court sustained the arbiter. In the instant case we reverse the fact finder, even though, in my opinion, there are as many believable facts in support of his conclusion as there were in the Sims case, supra.

7.  121 Utah 311, 315, 241 P.2d 468 (1952).