**UTAH STATE MEDICAL ASSOCIA-TION, Plaintiff and Appellant,**

v.

**UTAH STATE EMPLOYEES CREDIT UNION, Defendant and Respondent.**

No. 17806.

Supreme Court of Utah.

Sept. 8, 1982.

Max D. Wheeler, Salt Lake City, for plaintiff and appellant.

Dale R. Kent, Joseph R. Spransy, Duane B. Welling, Salt Lake City, for defendant and respondent.

PALMER, District Judge:

This case was tried to the court, sitting without a jury. From a judgment awarding only a portion of the damages sought, plaintiff appeals, seeking reversal as a matter of law, or that failing, remand to the trial court for appropriate proceedings.

On February 28, 1978, defendant entered into a purchase agreement under which the defendant agreed to sell, and the plaintiff agreed to purchase, certain improved real estate, including a building and equipment located at 540 East 5th South, Salt Lake City, Utah.

It was necessary for the defendant to retain possession of the premises for a period of time after execution of the agreement. Provisions were included allocating liability for the building's repairs. Paragraph 4 of the agreement reads, in part, as follows:

> Seller shall keep the premises in good condition and repair until possession is delivered to the Buyer and Seller shall pay ... all necessary maintenance, repair and replacement costs, if any, related to and including the date that possession is delivered to Buyer, and Buyer shall be responsible for and pay ... all maintenance and replacement costs from and after the date that it takes possession from Seller.

The defendant was in actual possession until late November, 1978, and delivered possession of the premises to the plaintiff on December 31, 1978.

Shortly after the plaintiff took possession, it discovered that the heating and air-conditioning system failed to operate.

The defendant asserts that such malfunction developed after it had delivered possession because it had conducted daily inspections on the property to insure that the pipes did not freeze and break. In any event, in late February or early March, plaintiff made substantial repairs and replacements to the system, costing approximately $6,000. The defendant learned of the repairs only when presented with the bill. When the defendant refused to pay, this lawsuit was filed.

The trial court found that the air-conditioning system was not in good condition at the time of the conveyance and held the defendant liable for $1,297.52, although the charges the plaintiff incurred had actually approximated $6,000. The trial court found that the condition of the system should be judged in reference to similar air-conditioning systems of like age. On appeal, the plaintiff claims that the determination of whether the air-conditioning system was in good condition should not be qualified by considering the age of the building and the air-conditioning system.

In analyzing the law in this case, one finds that ordinarily, the purchaser is entitled to any benefit that may accrue to the property and must also bear any loss or depreciation to the property, absent the vendor's fault or negligence. 92 C.J.S. *Vendor and Purchaser* § 295. The purchaser bears such risks, based on the principle of equitable ownership, even when the vendor retains possession of the property subject to a conveyance at some later date. *Jelco, Inc. v. Third Judicial District Court,* 29 Utah 2d 472, 511 P.2d 739 (1973); 77 Am.Jur.2d *Ven. & Pur.* § 357. The parties may, however, shift this burden by contrary contract provisions. 92 C.J.S. *Vendor and Purchaser* § 291; 77 Am.Jur.2d *Ven. & Pur.* § 357.

The question then is, did the parties in the present case shift the burden of the risk of loss of value to the premises, ordinarily borne by the purchaser, to the vendor? Clearly by the terms of the contract the parties showed their intent to make the vendor liable for any necessary repairs to

the premises while the vendor retained the premises, and the trial court accordingly found that the vendor was liable for the substandard condition of the air-conditioning system. However, the plaintiff claims that by the terms of the contract, the vendor was obligated to convey an air-conditioning system in good condition and free from any defects due to its age or prior usage.

■ Generally, provisions in sales contracts that the subject of sale is in good condition are not, unless so expressed, to be construed as importing the best or exceptionally good quality, but only that the condition of the article is reasonably good, "comparing favorably with other articles of like kind, in view of the average quality of such articles." 77 C.J.S. *Sales* § 324. *Accord, Schwartz v. Gross,* 93 Ohio App. 445, 114 N.E.2d 103 (1952).

■ The vendor may, by the terms of the contract, bear the burden of any loss of value of the property, but that burden does not include the potential liability for losses to the property caused by ordinary wear and tear, unless specifically provided for. 77 Am.Jur.2d *Ven. & Pur.* § 363. Similarly, the vendor who retains possession of the property after the contract has been signed should only be required to take reasonable steps to protect the property. *Rappaport v. Savitz,* 208 Pa.Super. 175, 220 A.2d 401 (1966); 77 Am.Jur.2d *Ven. & Pur.* § 357. It is reasonable to assume that the bargain of the parties was for the property as it was at the time of the contract. *Rappaport,* 220 A.2d at 403 citing Note, "Vendor's Liability for Permissive Waste," 48 Harv.L.Rev. 821 (1935).

■ In the present case the defendant did not expressly contract to *restore* the air-conditioning system to its original condition, but rather promised to *keep* the system in good condition while in possession of the premises. It is common knowledge that a commercial building is likely to undergo some amount of deterioration during its period of use. Likewise, the building's air-conditioning system was bound to show the consequences of ordinary wear and tear and reasonable deterioration. A 13-year-old air-conditioning system may not reasonably be expected to operate like a newly built or installed system. Thus, it appears that the trial court reasonably judged the quality of the system against that of a similar system, 13 years old.

The plaintiff argues vigorously that the court erred in applying the doctrine of caveat emptor (buyer beware) to the purchase of this particular premises. Plaintiff claims that since the defendant contracted to keep the premises in good condition and to make necessary repairs, the plaintiff did not take the premises "as is."

The doctrine of caveat emptor applied, at common law, to the sale of real property. The doctrine has eroded in the sale of new residential housing. However, the doctrine appears to prevail in the sale of used property whether homes or commercial. *See Miles v. Love,* 1 Kan.App.2d 630, 573 P.2d 622 (1977); *Steiber v. Palumbo,* 219 Or. 479, 347 P.2d 978 (1959); 77 Am.Jur.2d *Ven. & Pur.* § 329. In addition, the principle of caveat emptor "ordinarily applies to air conditioning equipment attached to and sold as a part of the realty, with the result that the seller is charged with no implied warranty of fitness." 15 A.L.R.3d 1207, § 7. *See also Voight v. Ott,* 86 Ariz. 128, 341 P.2d 923 (1959) (holding that unless the parties agree otherwise, an air-conditioning system that is an integral part of a house, and is necessary for comfortable living, is a fixture and therefore not subject to any implied warranties when sold with the house).

The clear majority of the courts have deemed it reasonable to hold the purchaser to the caveat emptor doctrine in the purchase of used housing. The parties know the article is not new, and the buyer who has an opportunity to inspect the article is placed on the alert for defects which might affect the article's quality, condition or fitness. *See* 151 A.L.R. 446.

While the present case involves the sale of a used commercial building, several landlord-tenant cases may be offered as comparisons. In *Marini v. Ireland,* 56 N.J. 130, 265

A.2d 526 (1970), the court held that implied in a lease for used residential apartment space was a duty on the part of the landlord to make repairs to vital facilities caused by ordinary wear and tear. Several courts have held that when determining whether any implied covenants or warranties exist in a sale or lease of real property, the intent of the parties should be analyzed as should the importance of the defective item to the comfortable enjoyment of the premises. *See id.; Bermes v. Facell,* La.App., 328 So.2d 722 (1976).

In the case at hand, the plaintiff complains that the trial court held the defendant liable only for those repair and replacement costs necessary to bring the air-conditioning system up to the proper operating level of a used, 13-year-old system. The plaintiff knew the building and the air-conditioning system were used. Although the doctrine of caveat emptor is slightly modified in this case by the terms of the contract, it is not abandoned. In interpreting the terms of the contract, the court must look to the agreement as a whole, to the circumstances, nature and purpose of the contract. *Maw v. Noble,* 10 Utah 2d 440, 354 P.2d 121 (1960); 17 Am. Jur.2d *Contracts* §§ 245, 246. Thus, where the parties bargained for the purchase of the 13-year-old building and air-conditioning system, and the vendor agreed to keep the premises in good condition and make all necessary repairs and replacements, it can reasonably be assumed that those repairs and replacements were not to be of such a nature as to require the vendor completely to renovate the building. Those repairs and replacements called for under the terms of the contract were those required to maintain the building and air-conditioning system in an operational condition for a building and air-conditioning system of like age and usage.

Affirmed. Costs to defendant.

HALL, C.J., and STEWART, OAKS and HOWE, JJ., concur.

DURHAM, J., does not participate herein; PALMER, District Judge, sat.